h GREMILLION, Judge.
The defendant-in-reconvention, Judice Industrial Blasting & Coating Company, Inc., appeals the judgment of the trial court awarding the plaintiff-in-reconvention, SBM Environmental, Inc. (Specialties), damages and attorney’s fees for the wrongful attachment of its property pursuant to a writ of attachment. For the following reasons, we affirm in part as amended.
FACTS
In May 1999, Universal Fabricators contracted with Judice Industrial for industrial painting and sandblasting to be performed on a job for Exxon Company, U.S.A., known as the “Diana Project.” As part of the contract, Judice Industrial was to perform 34,500 square feet of thermal spray coating, with specifications of ten mils DFT of 99.5% OIT pure aluminum to 51-inch internal diameter piping. Judice Industrial, in turn, subcontracted with SBM to perform the thermal spray applications (TSA) for $125,925, which included the cost of the aluminum wire required to carry out the TSA. Prior to the commencement of work by SBM, it requested that Judice Industrial purchase 2,500 pounds of OIT Wire, 1/8, twenty-five pound 99.5% aluminum wire. An invoice from TAFA Inc., reflecting the purchase of the wire in the amount of $7.2981 per pound for a total price of $37,950, was sent to Judice Industrial by SBM. As per its request, Judice Industrial remitted payment of $37,950 to SBM’s funding company, Express Business Funding, Inc., on July 8, 1999.
Exxon specifications for the project stated that blasting during surface preparation “shall not be conducted on steel surfaces that will be wet after blasting or when the surfaces are less than 5 deg. F above dew point or when the relative ^humidity is greater than 85%.” SBM mobilized its equipment and set up at the job location on July 12 and part of July 13, 1999. On July 14th, it was unable to perform any TSA due to rain. It did perform TSA on July 15th, and part of July 16th, before being shut down at 10:45 a.m. due to rain. On Saturday, July 17, 1999, Ken Judice, Judice Industrial’s president, informed Sal Parra, SBM’s president, that the contract between them was terminated due to the fact that SBM was understaffed and had failed to meet the 10 mil requirement on the work performed up to that point. Ju-dice further informed Parra that SBM’s employees would now be working for Judi-ce Industrial. Parra was not allowed to remove SBM’s equipment from the Exxon work site.
On July 28, 1999, Judice Industrial filed a Petition for Attachment alleging that SBM had overbilled it $22,610 for the cost of the aluminum wire and was indebted to it in that amount. Since SBM had refused to remit that amount, Judice Industrial sought a writ of attachment over SBM’s equipment, which was now located at its yard. The equipment consisted of the following items: (1) Double axle trailer, 16"; *586 (2) 185 CFM compressor; (3) 12 pieces of aluminum scaffolding with clamps; (4) Al-lis Chalmers forklift; (5) volume tank, six foot by two foot; (6) closed trailer double axle 16"; two blast hoods; (7) tool box with miscellaneous tools; (8) TSA unit; (9) OIT wire, 1/8, 25 lb. aluminum. In addition to the petition, Judice Industrial, as principal, filed an attachment bond of $22,610 with the Iberia Parish Clerk of Court, through its surety, Dorsey Insurance Agency. In response to the writ of attachment, SBM answered and, as plaintiff-in-reconvention, sought to have the writ of attachment dissolved. It sought damages from the defendants-injreconvention,3 Judice Industrial and Dorsey Insurance, based on the illegal seizure of its equipment, to include damages for loss of use, equipment rental expenses, loss of profit, attorney’s fees, and costs. It further sought damages for Judice Industrial’s breach of contract.
On October 13, 1999, SBM filed a Motion to Release Attachments seeking to have the seized property released into its possession. Upon its furnishing of a release bond in the amount of $22,610, the trial court ordered the seized property released into its possession. Following a hearing on the motion, the trial court ordered the writ of attachment dissolved and the bond filed by SBM canceled. It further ordered that SBM’s claims for damages would be reserved and heard at a trial on the merits. Thereafter, SBM filed a first amending reconventional demand adding Western Surety Company to the suit as a defendant. Judice Industrial answered the amended reconventional demand and filed a motion for summary judgment. Western Surety filed an exception of no cause of action, no right of action and/or exception of prematurity and, in the alternative, answered both the original and amending reconventional demands.
Trial on this matter commenced on December 12, 2000. At the start of the hearing, the trial court denied Judice Industrial’s motion for summary judgment. While hearing testimony from Judice, the trial court recessed the matter in order to allow him to obtain records from his office. Trial recommenced on August 28, 2001, after which the trial court issued oral reasons finding that Judice Industrial’s seizure of SBM’s property was illegal. It further awarded SBM $15,000 for damages associated with the dissolution of the writ and $2,910 in attorney’s fees, plus judicial | ¿interest from the date of demand and costs. Judgment was rendered on October 2, 2001. This suspensive appeal by Judice Industrial and devolutive appeal by Western Surety followed. SBM answered these appeals seeking damages for breach of contract and an increase in attorney’s fees.
ISSUES
On appeal, Judice Industrial raises two assignments of error. It argues that the trial court erred in failing to award it damages of $22,610, which represent the amount it was overbilled by SBM for the cost of the aluminum wire. Judice Industrial and Western Surety further argue that the trial court erred in awarding SBM $15,000, since SBM only proved damages totaling $2,149.36.
SBM raises one assignment of error, arguing that the trial court erred in failing to award it damages as a result of Judice Industrial’s breach of contract.
STANDARD OF REVIEW
Appellate courts review the trial court’s findings of fact pursuant to the manifest error — clearly wrong standard. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). This standard of review is well settled and need not be reiterated here.
*587 JUDICE INDUSTRIAL
In its first assignment of error, Ju-dice Industrial argues that the trial court erred in failing to award it the $22,610 it was overcharged by SBM on the cost of the aluminum wire.
Judice testified that Judice Industrial entered into a contract with Universal Fabricators to perform work on the Diana Project. Included in this contract was $178,000 for TSA work to be performed by Judice Industrial. However, since | sJudice had never performed any TSA under a contract prior to this time, he testified that he reached an agreement with Parra for SBM to perform the work for $125,925. He stated that the contract provided that work on the project was to be invoiced on a percentage completion basis either weekly or bi-weekly, with terms of the net to be paid forty-five days upon receipt of an invoice.
Prior to the commencement of work, Judice testified that Parra approached him and asked if he would provide SBM funds for the purchase of wire, since this was a big ticket item. He stated that he contacted Universal Fabricators, who agreed to front him the money from their contract. Judice stated that Parra sent him a TAFA, Inc. invoice referencing 5,200 pounds of aluminum wire at $7.29 per pound, for a total amount of $37,950. After he terminated SBM from the project, Judice testified that he determined that the cost of the wire was too high. He stated that he called TAFA and determined that the wire had really cost SBM $2.97 per pound for a total of $9,710.
Judice testified that Judice Industrial was entitled to the difference between the invoiced amount and the actual cost, $20,010, since this was part of the contract amount between it and Universal Fabricators, and it performed the work while SBM did nothing to earn this money. Ju-dice testified that in his discussion with Parra concerning the purchase of the wire, he only agreed to pay the invoice amount of the wire, which he did based on the fictitious invoice.
Parra testified that he provided Judice with the invoice for $37,950, but told him that it was a sample he could provide to Universal Fabricators if they asked for a TAFA invoice. He stated that he and Judice had previously arranged that he 1 (¡would invoice Judice for $37,950 when he delivered the wire. Parra stated that Ju-dice replied that this would be fine with him if Universal Fabricators agreed with the price. He stated that Judice told him that he only wanted to see the wire, and that when he did, he approved the purchase. Parra stated that his actual cost for the wire was approximately $9,000 for 5,200 pounds of wire.
Parra further testified that Judice agreed to pay the $37,950 based on SBM’s June 4, 1999 invoice of this amount, which included the cost of the wire and the total amount of the contract. He stated that he also delivered $400 worth of wire that he already owned to the job site. In addition to procuring the wire, Parra testified that the invoice amount included mobilization, administrative fees, procedure manual, certifying the project, cash flow, and labor. He testified that he took his equipment to Judice Industrial’s yard, where it was inspected by Exxon and Universal Fabricators, he explained his procedures to both companies, and then performed testing and demonstration work to determine tinsel strength, bending strength, and bonding strength, etc., in order to gain approval for the job. Parra stated that he then moved his equipment and set it up at Exxon’s job site. This mobilization took place on July 12 and part of July 13, 1999. After that, he stated that they were able to *588 complete 1,000 square feet of TSA, despite the whole week being a rain out.
In rendering its oral reasons, the trial court stated that it was denying Judice Industrial’s principal demand on the alleged overcharge by SBM in the amount of $22,610. In doing so, it stated:
Yes. Absolutely. And let me make that again clear. We’re here — well, I’m not going to make it clearer than it is now but I think [Judice Industrial] knew what it was getting into and should’ve checked. But to come back later and say we don’t know who we’re dealing with is not|7sufficient.
Considering the contradictory testimony concerning the TAFA invoice and a possible agreement between Judice and Parra with regard to the price of the wire, we cannot say that the trial court erred in denying Judice Industrial’s request for a refund on the alleged overcharge of $22,610. The judgment of the trial court denying Judice Industrial’s principal demand is affirmed.
DAMAGES
Judice Industrial and Western Surety next argue that the trial court erred in awarding SBM $15,000 in damages based on Judice Industrial’s wrongful seizure of its property pursuant to the writ of attachment. They base their claim on the evidence presented by SBM at the trial, which only established actual damages of $2,149.36. We agree.
Article 3506 of the Louisiana Code of Civil Procedure allows a trial court to award damages for the wrongful issuance of a writ of attachment on reconventional demand. In Burton v. Jardell, 589 So.2d 610, 614 (La.App. 2 Cir.1991), the court stated with regard to the award of damages in a suit for wrongful sequestration:
The proof to substantiate a defendant’s claim of damages must be clear and definite and not subject to conjecture. Holliman v. Griffis, 415 So.2d 306 (La.App. 2d Cir.1982), writ denied, 420 So.2d 456 (La.1982). A defendant is entitled to recover the actual damages which he has sustained, damages for loss of profit and loss of use of the movable sequestered. Talley v. Bradley, 177 So.2d 624 (La.App. 3rd Cir.1965); Oubre v. Hinchman, 365 So.2d 17 (La.App. 4th Cir.1978), writ denied, 365 So.2d 1375 (La.1978); Bice v. Southside Motors, Inc., 344 So.2d 78 (La.App. 2d Cir.1977); Chapman v. Steckler, 442 So.2d 909 (La. App. 3rd Cir.1983); Belle v. Chase, 468 So.2d 744 (La.App. 5th Cir.1985).
IsDuring the trial on SBM’s reconven-tional demand, it presented evidence totaling $2,149.36 in receipts. This amount represented $152.21, $792.66, and $586.33 for trailer rentals; $495.05 in freight for a new metalizing thermal spray machine Parra agreed to purchase from TAFA for the “Diana Project;” $116.05 for the replacement of a starter on its forklift after it was returned by Judice Industrial; and $7.06 from Auto Zone for fixing the flat tires on his trailer. These figures are the only evidence of actual damages introduced by SBM into evidence. To award greater damages would be based on speculation and not fact. Accordingly, we find that the trial court erred in awarding SBM $15,000 in damages and amend the judgment to award it the $2,149.36 proven at trial.
BREACH OF CONTRACT
In its answer to appeal, SBM argues that the trial court erred by failing to award it damages as a result of Judice Industrial’s breach of contract. It claims that the trial court should have awarded it $8,702 in lost profit based on Parra’s testimony that he projected its profit margin on the. job at 30%, which would have *589 amounted to $37,500. Subtracting the profit from the sale of the aluminum wire from this amount results in a loss profit of $8,702.
The judgment of the trial court granted SBM damages only in regard to the dissolution of the writ of attachment, and denied its claim for damages pursuant to an alleged breach of contract by Judice Industrial. In denying damages, the trial court stated in its oral reasons:
The allegations were made that the cost of mobilization, cost of profit, a total of $37,000.00 was the estimate given by the plaintiff. Again, that was a high water mark as far as the estimate goes, but there was no corroborating evidence presented as to the value of the lost | qbusiness opportunities, nothing in the way of corroborating witnesses, financial data, or any kind of financial information that would verify $39,000.00, or $37,000.00 was due and owing.
A review of the record reveals that there is no error in this finding. Accordingly, since Parra failed to substantiate his claim of damages, and this was a finding of fact by the trial court, we cannot say that it erred in denying SBM’s claim of damages for lost profit. This assignment of error is dismissed as being without merit.
Although SBM answered Judice Industrial’s appeal seeking an increase in the amount of attorney’s fees awarded, it failed to brief this issue. Thus, this question is rendered moot pursuant to Rule 2-12.4, Uniform Rules — -Courts of Appeal.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is amended to decrease SBM’s damage award from $15,000 to $2,149.63. It is affirmed in all other respects. The costs of this appeal are assessed equally between Judice Industrial Blasting & Coating Company, Inc. and SBM Environmental, Inc. (Specialties).
AFFIRMED AS AMENDED.